### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ───────────────────────────────── | ) |
| | ) |
| **AIMEE L. KINGSTON,** | ) |
| | ) |
| **Plaintiffs** | ) |
| | ) |
| **v.** | ) |
| | )    **No. 24-cv-12021-DJC** |
| | ) |
| **GREGORY STRANGE, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| ───────────────────────────────── | ) |

### MEMORANDUM AND ORDER

**CASPER, J.**                                                                  **June 16, 2025**

## I.      Introduction

Plaintiff Aimee L. Kingston ("Kingston") has filed this lawsuit *pro se* against Defendants (collectively, "Defendants") Gregory Strange ("Strange"), a former Chair of the Town of Easton Planning and Zoning Board and a former member of the Town of Easton Historical Commission, Frank Caridi ("Caridi"), the Town of Easton Local Building Inspector, Stephanie Danielson ("Danielson"), the Town of Easton Director of Planning and Economic Development, Kevin Greiner ("Greiner"), the Town of Easton Building Commissioner and Zoning Enforcement Officer, Connor Read ("Read"), the Town of Easton Town Administrator, Dottie Fulginiti ("Fulginiti"), the Chair of the Easton Select Board, Peter Deschenes ("Deschenes"), a former Vice Chair for the Town of Easton Planning and Zoning Board, Robert Stetson ("Stetson"), a former member and current Chair of the Town of Easton Planning and Zoning Board, Christopher Anderson ("Anderson"), a former member of the Town of Easton Planning and Zoning Board,

Deborah Balcarek ("Balcarek"), a former member of the Town of Easton Planning and Zoning Board, Amos Keddem ("Keddem"), a former member of the Town of Easton Planning and Zoning Board (collectively, the "individual Defendants"), the Town of Easton, Massachusetts (the "Town"), the Town of Easton Massachusetts Inspectional Services ("Inspectional Services"),  the Town of Easton Massachusetts Building Department (the "Building Department"), the Town of Easton Massachusetts Planning and Zoning Board (the "Planning and Zoning Board"),  the Town of Easton Massachusetts Planning & Economic Development ("Planning & Economic Development"), the Town of Easton Massachusetts Department of Town Administrator (the "Department of Town Administrator") and the Town of Easton Massachusetts Select Board (the "Select Board") (collectively, the "Town Defendants") under 42 U.S.C. § 1983, alleging violations of the First, Fourth and Eighth Amendments and violations of procedural due process, substantive due process and equal protection pursuant to the Fourteenth Amendment as to all Defendants.  D. 1.  Defendants have moved to dismiss.  D. 7.  For the reasons stated below, the Court ALLOWS the motion to dismiss, D. 7, as to all claims against the Town Defendants and ALLOWS the motion to dismiss as to Kingston's substantive due process, equal protection claims and her claims pursuant to the First, Fourth and Eighth Amendments as to the individual Defendants.  The Court DENIES the motion to dismiss, D. 7, as to Kingston's procedural due process claim as to the individual Defendants.

## II.    Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must

2

perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).  "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'"  García-Catalán, 734 F.3d at 103 (alteration in original) (citation omitted).  "This context-specific inquiry does not demand 'a high degree of factual specificity.'"  Id. (citation omitted).

## III.    Factual Background

The following facts are drawn from Kingston's complaint, D. 1, and from the attached exhibits, and are accepted as true for the purpose of resolving the motion to dismiss.  On or about March 7, 2022, the Town Planning and Zoning Board issued Kingston a special permit to modify the existing structure located at 35-37 Poquanticut Ave, Easton, Massachusetts (the "Property"). D. 1 ¶ 3.  As alleged, this permit approved the Property's continued use as a duplex[1] and allowed the modifications necessary to accommodate a dormer addition on the back of the structure.  Id. Kingston's general contractor, Michael Castillo ("Castillo"), applied for a building permit to modify the structure at the Property and attached drawings illustrating the plan to re-frame the roof to accept the dormer addition and to renovate the two units.  Id. ¶ 4.  On or about June 30, 2022, Caridi, the Town's building inspector issued a building permit for this modification.  Id.

---

[1] As alleged, the Town allowed duplexes only by special permit.  D. 1 ¶ 3.  A previous special permit, which had expired prior to May 7, 2022, had allowed the use of the Property as a duplex.  Id.

On or about August 30, 2022, Strange, then Chair of the Planning and Zoning Board, phoned the Town's Department of Inspectional Services to report a suspected violation.  Id. ¶ 5. That day, Caridi phoned Castillo to share that an immediate stop work order was being authorized and he must cease and desist all activities on the site due to a violation of local building codes (the "Violation").  Id. ¶ 6.  Kingston then called the Building Department and the Town's Planning and Zoning Clerk, Suzanne Niego-Levy to request a copy of the Violation.  Id.  Niego-Levy said the Violation had not yet been uploaded and she could not send it via e-mail.  Id.  As alleged, Kingston did not receive a written copy of the Violation until on or about September 6, 2022.  Id. ¶ 8.  The written notice of the Violation stated that Kingston's planned structural demolition work was not in accordance with the special permit issued on March 7, 2022.  Id.  According to Kingston, the notice of the Violation did not include an abatement or remedy order as required.  Id.

The next day, on or about September 7, 2022, Niego-Levy informed Kingston that the Planning and Zoning Board would discuss the Violation at a remote meeting that evening.  Id. ¶ 9. As alleged, at that meeting, Strange made misrepresentations concerning the Violation and "interrupt[ed], berate[d], belittle[d] and sp[o]ke over" Kingston when she tried to correct those misrepresentations.  Id. ¶ 10.  Kingston did not have the opportunity to present documentary evidence at that meeting.  Id.

Following this meeting, Kingston and her attorney continued to discuss the Violation with various Town board members.  For example, on September 28, 2022, Kingston discussed the Violation with Danielson, and then on October 4, 2022 met with Strange and Danielson via Zoom. Id. ¶¶ 11-12.  On the October 4, 2022 Zoom meeting, Strange and Danielson suggested Kingston could rectify the Violation by rebuilding the structure to its exact historic dimensions and paying a five thousand dollar fine to the Historic Commission.  Id. ¶ 12.  This offer was unacceptable to

4

Kingston.  <u>Id.</u>  On December 6, Kingston's attorneys contacted Kevin Greiner, Inspector of Buildings/Zoning Enforcement Officer to discuss a path forward.  <u>Id.</u> ¶ 13.  Greiner allegedly said he would need to defer to Danielson, who then reasserted her prior position.  <u>Id.</u>  As alleged, Kingston's attorney attempted to have the Property added to the agenda for the next Planning Board meeting, but this request was not honored.  <u>Id.</u> ¶ 14.  Throughout the following year and a half, Kingston and her attorney continued to communicate with various Town officials but could not reach a satisfactory resolution.  <u>Id.</u> ¶¶ 15-33.

**IV.     Procedural History**

Kingston filed this complaint on August 6, 2024.  D. 1.  Defendants have moved to dismiss, D. 7, and Kingston filed several responses to the motion, D. 9; D. 29; D. 49-1.  Following Defendants' filing of their motion to dismiss, Kingston moved for default judgment.  D. 11.  The Court denied this motion given that Defendants had responded to the complaint with a motion to dismiss.  D. 47.  The Court then heard the parties on the pending motion to dismiss and took the matter under advisement.  D. 52.

**V.      Discussion**

  **A.     <u>The Town Defendants Must be Dismissed</u>**

Before reaching the merits of Kingston's claims, the Court must consider whether Kingston has named Town entities as Defendants.  As Defendants correctly note, the various Town municipal boards and departments named as Town Defendants, other than the Town itself, must be dismissed as they are not suable entities for § 1983 claims.  D. 8 at 3; <u>see</u> <u>Dwan v. City of Boston</u>, 329 F.3d 275, 278 n.1 (1st Cir. 2003); <u>see, e.g.</u>, <u>LeBoeuf v. Town of Monson</u>, No. 11-cv-30136-MAP, 2011 WL 6141012, at *2 (D. Mass Oct. 20, 2011) (and cases cited).  Moreover, as to the Town itself, the Supreme Court has concluded that a municipality only can be held liable

under § 1983 if the challenged conduct was committed pursuant to official municipal policy, but not pursuant to a *respondeat superior* theory of liability.  Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658, 691 (1978).  Because Kingston does not allege any official policy by the Town that resulted in a violation of her Constitutional rights, and instead cites the actions of "bad actors," see D. 1 ¶¶  17, 23, the Town is also dismissed.

### B.    Procedural Due Process

The Court, accordingly, turns to the claims as alleged against the individual Defendants. "The fundamental requisite of due process is an opportunity to be heard at a meaningful time and in a meaningful manner."  Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 222 (D. Mass. 2005) (internal citation and quotation marks omitted).  "It is well established that in every case where a protected property interest is at stake, the Constitution requires, at a minimum, some kind of notice and some kind of opportunity to be heard."  Clukey v. Town of Camden, 717 F.3d 52, 59 (1st Cir. 2013) (and cases cited).

Even as alleged, Kingston received notice and a hearing.  D. 1 ¶¶ 9-10.  Although it may well be that this was all of the process that was due to her, the Court cannot resolve that issue without a more developed record because "[e]xactly what sort of notice and what sort of hearing the Constitution requires . . . vary with the particulars of the case."  Clukey, 717 F.3d at 59; see Duhani v. Town of Grafton, 52 F. Supp. 3d 176, 182 (D. Mass. 2014) (applying summary judgment standard and concluding that "to establish that he was deprived of his procedural due process right to a pre-termination hearing, a plaintiff must show more than bias, he must show that the pre-termination hearing was meaningless because, for instance, the outcome was pre-ordained, or the bias was so severe as to undermine the concerns and goals of the hearing").  The adequacy of the process here will be best determined on a fuller record.  Miley v. Hous. Auth. of City of Bridgeport,

926 F. Supp. 2d 420, 431 (D. Conn. 2013) (noting that "the question of whether [plaintiff] was afforded procedural due process is a fact intensive inquiry best reserved for summary judgment or trial").

Defendants highlight González–Droz v. González–Colón, 660 F.3d 1, 15 (1st Cir. 2011), in which the First Circuit noted that a plaintiff's notice, opportunity to be heard and right to counsel sufficed to satisfy the requirements of due process. D. 8 at 6. But the First Circuit reached its decision in González–Droz after it had been resolved by the district court at the summary judgment stage on a developed record. González–Droz, 660 F.3d at 12-15. There, the court specifically noted that plaintiff's claim that she had only a few hours to prepare for her post deprivation hearing was "sheer persiflage." Id. at 14. Here, where we must take Kingston's allegations as true, and Kingston alleges she received notice immediately before her hearing and any opportunity she had to be heard was not meaningful, dismissal is inappropriate. D. 1 ¶¶ 9-10. Defendants' motion to dismiss Kingston's procedural due process claim is, therefore, denied as to the individual Defendants.

### 1.     Qualified Immunity

As another ground for dismissing the procedural due process claim (and the other claims against them), the individual Defendants contend that they are entitled to qualified immunity. D. 8 at 10-11. In determining whether a government official is entitled to qualified immunity, the Court must consider: (1) "whether the plaintiff's version of the facts makes out a violation of a protected right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Alston v. Town of Brookline, 997 F.3d 23, 50 (1st Cir. 2021) (quoting Alfano v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017)). The latter question "is not whether the official actually abridged the plaintiff's constitutional rights but, rather, whether the official's

conduct was unreasonable, given the state of the law when he acted." Alfano, 847 F.3d at 75. "[T]he right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. "Where persons are deprived of property interests, it has long been 'clearly established' that due process safeguards must be afforded." Amsden v. Moran, 904 F.2d 748, 752 (1st Cir. 1990) (citations omitted). Because, as explained above, Kingston plausibly has plead a procedural due process claim, the Court does not conclude at this juncture, in the absence of a developed record, that qualified immunity shields the individual Defendants on this one claim that survives the motion to dismiss.

### C.    Substantive Due Process

Substantive due process prevents "governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests." Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992) (internal quotation marks and citations omitted). To establish a substantive due process claim, plaintiffs must sufficiently allege both "that the acts were so egregious as to shock the conscience" and that such acts deprived them of a "protected interest in life, liberty, or property." Pagán v Calderón, 448 F.3d 16, 32 (1st Cir. 2006). "[C]onscience-shocking conduct is an indispensable element of a substantive due process challenge to executive action." DePoutot v. Raffaelly, 424 F.3d 112, 118 n.4 (1st Cir. 2005).

Although "no scientifically precise formula" exists to determine whether an official's action is sufficiently shocking to constitute a substantive due process violation, the First Circuit

has explained that "conduct must at the very least be extreme and egregious, or, put another way, truly outrageous, uncivilized, and intolerable" to constitute conscience-shocking behavior. Pagán, 448 F.3d at 32 (internal quotation marks and citation omitted); see Dutil v. Murphy, 550 F.3d 154, 160 (1st Cir. 2008) (noting that a "[a] violation of substantive due process is found when the government's conduct is so 'egregiously unacceptable, outrageous, or conscious-shocking' that 'the constitutional line has been crossed'") (quoting Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990)) (further citations omitted).  As such, "'[m]ere violations of state law, even violations resulting from bad faith,' do not invariably amount to conscience-shocking behavior." Pagán, 448 F.3d at 32 (alteration in original) (quoting DePoutot, 424 F.3d at 119).

The First Circuit has "held, with a regularity bordering on the monotonous, that the substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or wrong." Pagán, 448 F.3d at 33; see Mongeau v. City of Marlborough, 492 F.3d 14, 20 (1st Cir. 2007) (concluding a plaintiff who alleges he was wrongfully denied a permit "may find recourse in other laws, but not in the substantive component of the Due Process Clause of the Fourteenth Amendment").  The only exception exists for "truly horrendous situations." Pagán, 448 F.3d at 33.  Kingston has, at most, alleged that Defendants issued a stop work order in bad faith, refused to find a reasonable solution and were rude to her publicly.  None of this rises to the level of a "truly horrendous situation."  Accordingly, Defendants' motion to dismiss the substantive due process claim is allowed.

### D.    Kingston Has Not Alleged a Violation of the Equal Protection Clause

The equal protection clause "prohibits a state from treating similarly situated persons differently because of their classification in a particular group." Pollard v. Georgetown Sch. Dist.,

132 F. Supp. 3d 208, 222 (D. Mass. 2015) (quoting <u>Mulero-Carrillo v. Román-Hernández</u>, 790 F.3d 99, 105-06 (1st Cir. 2015)).  To plead a § 1983 claim based on an equal protection violation, Kingston "must allege facts plausibly demonstrating that compared with others similarly situated," the plaintiff was "selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  <u>Harrington v. City of Attleboro</u>, 15-cv-12769-DJC, 2016 WL 1065804, at *6 (D. Mass. Mar. 16, 2016) (quoting <u>Barrington Cove Ltd. Partnership v. Rhode Island Hous. & Mortg. Finance Corp.</u>, 246 F.3d 1, 7 (1st Cir. 2001)).  Despite her urging to the contrary, <u>see</u> D. 49-1 at 7-13, this showing of disparate treatment is a "threshold requirement" for any equal protection claim.  <u>Ayala-Sepúlveda v. Mun. of San Germán</u>, 671 F.3d 24, 32 (1st Cir. 2012); <u>see</u> <u>Buchanan v. Maine</u>, 469 F.3d 158, 177-78 (1st Cir. 2006) (affirming summary judgment to defendant on a "class of one" equal protection claim because the plaintiff "failed to show any 'specific instances' involving similarly situated individuals" that were treated differently) (emphasis omitted).  Here, where Kingston has not alleged plausibly that she was treated differently from others similarly situated, <u>see generally</u> D. 1, dismissal of her equal protection claim is warranted.

### E. Kingston's First, Fourth and Eighth Amendment Claims Are Unsupported by Her Allegations

Kingston asserts violations of her First, Fourth and Eighth Amendment rights, but none of those amendments would permit recovery in these circumstances.  First, Kingston suggests Defendants violated her First Amendment rights by refusing to allow her to appear before the Planning Board.  D. 1 ¶ 62.  But the First Amendment "does not grant to members of the public generally a right to be heard by public bodies making decisions of policy."  <u>Minn. State Bd. for Cmty. Colls. v. Knight</u>, 465 U.S. 271, 283 (1984).  Second, Kingston asserts that the stop work

order constitutes an unreasonable seizure in violation of the Fourth Amendment.  D. 1 ¶ 60.  But "the Fourth Amendment protects people, not places," and its "basic purpose . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."  Carpenter v. United States, 585 U.S. 296, 303-04 (2018) (citations omitted).  Kingston identifies no case applying the Fourth Amendment to a stop work order from a town.  See D. 49-1 at 18-20.  Third, Kingston argues that Defendants' deprivation of her property constitutes "cruel and usual" punishment in violation of the Eighth Amendment, D. 1 ¶ 61, but the Eighth Amendment does not apply to those who have not been convicted of a crime.  City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (noting that the "State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law" (quoting Ingraham v. Wright, 430 U.S. 651, 671-72, n.40, (1977))).  Kingston's First, Fourth and Eighth Amendment claims are, therefore, dismissed.

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS the motion to dismiss, D. 7, as to all claims against the Town Defendants, and ALLOWS the motion to dismiss as to Kingston's substantive due process, equal protection claims and her claims pursuant to the First, Fourth and Eighth Amendments as to the individual Defendants.  The Court DENIES the motion to dismiss, D. 7, as only to one claim, Kingston's procedural due process claim, as to the individual Defendants, who now are the only remaining Defendants.

So Ordered.

/s Denise J. Casper
United States District Judge

11